OPINION
Appellant, Jesse McKinney, appeals from the judgment entered by the Lake County Court of Common Pleas. A jury found McKinney guilty of felonious assault, with a firearm specification; trafficking in L.S.D.; trafficking in counterfeit controlled substances, with a firearm specification; and tampering with evidence.
For these crimes, McKinney was sentenced to a prison term of three years for the felonious assault conviction, one year for the trafficking in L.S.D. conviction, one year for the trafficking in counterfeit controlled substances conviction, and three years for the tampering with evidence conviction. These sentences were to be served concurrently. In addition, McKinney was sentenced to a three-year prison term for the firearm specification on the felonious assault conviction and a one-year prison term for the firearm specification on the trafficking in counterfeit controlled substances. The sentences for the firearm specifications were to be served consecutive to each other and to the sentences for the underlying offenses. The total prison term was seven years.
In March of 2000, McKinney had a small gathering at his mother's home in Eastlake, Ohio. At some time in the evening, a guest of the party, Theresa Monateri, received a page from her ex-boyfriend, Jason Cavallaro. She returned Jason's page. Jason asked Theresa if she knew where he could get some L.S.D., commonly know as acid, an illegal hallucinogenic drug. Theresa then gave the phone to two males at the party, who agreed to sell acid to Jason and his friends.
Jason Cavallaro, Patrick Cavallaro, and Tom Janz drove to McKinney's house to purchase the drugs. Jason testified that after they entered the house, they were told to wait. About ten to fifteen minutes later, Jason, Patrick, and Tom went to a back bedroom. In this back bedroom, Josh Garrett handed a cellophane package to McKinney. McKinney offered to sell this substance to Jason. The substance was held out to be L.S.D. However, Jason believed the substance to be fake, and there was no sale.
Jason Cavallaro then testified that McKinney yelled, "I smell a snitch." A heated argument ensued between Jason, Patrick, Tom and some of the partygoers. This argument carried out onto the front lawn, where a brawl occurred. McKinney then came out of the house with a shotgun and fired two shots, one into the ground and the second into the air above the car that Jason, Patrick, Tom, and Theresa were leaving in.
McKinney testified on his own behalf. He stated that he was not involved in any sale of L.S.D. He admitted to shooting the gun. He stated that he fired the first shot into the ground as a warning shot, and that the second shot was fired accidentally.
Joshua Garrett was also convicted of crimes resulting from these incidents. He also has an appeal pending before this court.[1]
McKinney raises eight assignments of error. His first assignment of error is:
 "The trial court erred to the prejudice of the appellant when it denied appellant's motion to suppress."
McKinney filed a motion to suppress any statements and other evidence resulting from his detention, arrest, and the search of the residence. The motion to suppress was denied.
McKinney claims that the police did not have reasonable suspicion to detain him. McKinney next asserts that the police did not have probable cause to arrest him. He also argues that the search warrant was not supported by probable cause. He further claims the police illegally executed the search warrant. Finally, he claims certain statements were taken in violation of his Miranda rights.
In order to detain an individual, an officer must be able to "point to specific and articulable facts, which taken together with rational inferences with those facts, reasonably warrant an intrusion."[2] There were reports of gunshots being fired at the McKinney residence. This was enough reasonable suspicion for the police to detain McKinney.
McKinney was questioned at the residence. After speaking to a neighbor, the officer learned that the shots had been fired from the McKinney property at the fleeing car. McKinney was then transported to the police station for questioning.
To justify a constitutionally valid arrest there must be probable cause "`defined in terms of facts and circumstances "sufficient to warrant a prudent man in believing that the (suspect) had committed or was committing an offense."'"[3] When the officer placed McKinney in the back of the car he had probable cause to believe that McKinney had committed a firearms offense. The officer had the information from the neighbor that the shots were fired from the McKinney residence at the fleeing car, and he had received the call from dispatch regarding Tom Janz's report of the gunshots fired from the residence. Moreover, when McKinney was formally arrested the police had numerous statements that indicated McKinney was involved in criminal activity.
In seeking a search warrant of the premises, Patrolman William Lewis prepared and signed an affidavit that was given to the judge. This affidavit contained a summary of all the statements naming McKinney as a suspect in the events of the night in question. A reviewing court's duty is simply to ensure that the magistrate had substantial basis for determining that probable cause existed to issue the search warrant.[4]
The affidavit was substantial basis for the judge to conclude that probable cause existed.
While executing the search warrant, the officers entered through an unlocked window. The officers had asked McKinney for a key, and he told them that he did not have one. The officers knew that no one was in the residence, as McKinney was in custody and his mother was out of town. Having a valid search warrant, the officers could have broken the window if their requests to enter were denied.[5] Therefore, entering through an unlocked window was a reasonable means of entry. The search warrant was properly executed.
McKinney's final argument in this assignment of error is that theMiranda warnings were not complied with and that he did not make a knowing and intelligent waiver of those rights. McKinney asserts that "any alleged oral or written statements" should have been suppressed. This alleged error is not specific enough for appellate review. McKinney has not advanced which statements should have been suppressed. He does not state which of these statements, if any, were introduced at trial. Thus, he has not shown that he was prejudiced.
McKinney's first assignment of error is without merit.
McKinney's second assignment of error is:
 "The trial court erred to the prejudice of the appellant when it denied appellant's motion in limine regarding other firearms."
The state introduced evidence of five firearms that were found during the search of the residence. McKinney claims four of the firearms, that were not fired on the night in question, should not have been admitted. Patrolman William Lewis of the Eastlake Police Department testified to the results of the search warrant executed on the McKinney residence. He stated that one .12 gauge bolt action shotgun was found in McKinney's former bedroom. He also stated that a pump action shot gun and three .22 caliber rifles were found in McKinney's mother's bedroom. The pump action shotgun found in the mother's bedroom was the firearm that was fired on the night in question.
McKinney asserts that this evidence was barred by Evid.R. 401 and 403(A). Evid.R. 401 defines relevant evidence, and states: "`[r]elevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."
The admission of evidence is within the sound discretion of the trial court.[6] That decision may not be overturned by a reviewing court without a showing of an abuse of that discretion.[7]
McKinney was charged with three offenses with firearm specifications. He was convicted of felonious assault and trafficking in counterfeit controlled substances, both with firearm specifications as set forth in R.C. 2941.145 and R.C. 2941.141, respectfully. R.C. 2941.141, also the gun specification accompanying the charge of trafficking in L.S.D., requires a finding that the offender had a firearm on or about his person or under his control while committing the underlying offense.
Two of the crimes he was charged with took place inside the house. There was testimony that there was a gun in the back bedroom while the failed drug transaction was taking place. This evidence was relevant to show that there could have been a firearm on or about McKinney's person or under his control during the alleged felonies.
Witnesses testified that there was a gun in the bedroom and that there was a gun in the bathroom. No guns were found in the bathroom. McKinney was charged with tampering with evidence in violation of R.C.2921.12(A)(1), which states:
 "(A) No person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall do any of the following:
 "(1) Alter, destroy, conceal, or remove any record, document, or thing, with purpose to impair its value or availability as evidence in such proceeding or investigation;"
Evidence that these guns had been moved after the events in question, but prior to the police investigation, tends to show that the evidence had been tampered with.
"Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury."[8] The admission of firearms in a criminal case is somewhat prejudicial. In this case, however, there was a great deal of probative value considering the offenses McKinney was charged with.
We cannot say that the probative value of the firearms was substantially outweighed by the danger of unfair prejudice. The trial court did not err by denying McKinney's motion in limine.
McKinney's second assignment of error is without merit.
McKinney's third assignment of error is:
 "The trial court erred to the prejudice of the appellant by denying appellant's oral motion for a mistrial after state's witness testified regarding appellant's refusal to make a statement in violation of his Fifth, Sixth and Fourteenth Amendment rights."
McKinney claims he was prejudiced by Patrolman Michael Maloney's testimony regarding McKinney's refusal to give a statement at the police station. During the direct examination of Patrolman Maloney, the following colloquy occurred:
"Q: And what happened next?
 "A: Once we were at the department Mr. McKinney did not want to make a statement.
"MR. MORRISON: Objection.
"THE COURT: Sustained.
"MR. MORRISON: Move to strike that.
 "THE COURT: Will go out, the jury will disregard the statement."
The reference to McKinney's refusal to make a statement should not have been made. A criminal defendant is entitled to exercise his right to remain silent without having it used against him.
McKinney cites this court's opinion in State v. Johnson in support of his argument that the above reference to his refusal to make a statement is reversible error.[9] However, in Johnson, there were multiple references to the defendant's refusal to make a statement, including some by the prosecutor.[10] In this case, there was a single reference to McKinney's refusal to make a statement. The prosecution did not solicit this reference. Defense counsel objected to this reference, and the objection was sustained. The court then issued a curative instruction to the jury to disregard the statement.
The single improper reference to McKinney's refusal to make a statement is not reversible error. We cannot say that McKinney was denied a fair trial because of this reference. The trial court did not err in refusing to grant McKinney's motion for a mistrial.
McKinney's third assignment of error is without merit.
McKinney's fourth assignment of error is:
 "The trial court erred to the prejudice of the appellant when it admitted into evidence diagrams of the appellant's house in violation of Evidence Rule 403 of the Ohio Rules of Evidence."
McKinney asserts that the state's exhibits 8a and 8b, diagrams of the house where the incident occurred, should have been excluded because they are not drawn to scale and don't accurately reflect the space inside the house or the area around the house. He claims that Evid.R. 403 precludes the admission of this evidence.
Deborah McKinney, McKinney's mother and the owner of the residence, testified that state's exhibit 8a accurately depicted the inside of her home.
Numerous witnesses testified to the events that occurred in and around the McKinney residence. Thus, there was a great deal of probative value of the diagrams, as they helped the jury understand the testimony of the witnesses. Moreover, McKinney has failed to show that any unfair prejudice, confusion of the issues, or misleading the jury occurred as a result of the introduction of this evidence. Therefore, the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice or confusion of the issues.
The trial court did not err in admitting this evidence. McKinney's fourth assignment of error is without merit.
McKinney's fifth assignment of error is:
 "The trial court erred to the prejudice of the appellant when it allowed the state to elicit testimony regarding a prior incident involving appellant and a firearm."
McKinney also claims the state should not have been able to question him about a prior incident with a firearm. McKinney claims this evidence is precluded by Evid.R. 401 and Evid.R. 403.
The state questioned McKinney about an incident with a firearm that occurred when he was fifteen. McKinney responded that he was "skeet shooting" with his mother and accidentally fired a shot into the ground, barely missing his foot.
McKinney testified that the second shot fired on the night in question was an accident. He stated that the gun went off when it hit his abdomen, while his finger was on the trigger, as he was bringing the gun down. McKinney was charged with felonious assault. He raised the defense that the second shot was an accident. McKinney's prior history handling firearms was relevant to determine whether the second shot was fired accidentally.
Relevant evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury.[11] The testimony regarding the prior incident had probative value, as it helped the jury determine if the second shot was fired accidentally. The danger of prejudice was minimal, because the incident involved a controlled shooting of a firearm in the presence of his parent. Further, the limited scope of the inquiry was not enough to mislead the jury or confuse the issues.
The probative value of the testimony about the prior incident with a firearm was not substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. Therefore, the trial court did not err in admitting the evidence.
McKinney's fifth assignment of error is without merit.
McKinney's sixth assignment of error is:
 "The verdict finding the appellant guilty of felonious assault with a firearm specification; trafficking LSD; trafficking in a counterfeit controlled substance with a firearm specification and tampering with evidence is against the manifest weight of the evidence."
In determining whether a verdict is against the manifest weight of the evidence, the Supreme Court of Ohio has adopted the following language:
 "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction."[12]
In regard to the felonious assault conviction, McKinney admitted firing the gun. There was some competent credible evidence presented that McKinney fired the gun at the car as it was leaving. Thus, the conviction for felonious assault and the accompanying firearm specification were not against the manifest weight of the evidence.
There was evidence presented that shells from the shotgun were found in the gutter of the house. Officers also testified to finding firearms in a closet. Finally, the officers testified that some ammunition was hidden under the floorboards in McKinney's former bedroom. Based on this evidence, the conviction for tampering with evidence was not against the manifest weight of the evidence.
McKinney denies any involvement in the transaction for the sale of acid. However, there was some competent credible evidence presented that McKinney offered the acid for sale over the phone. Also, Jason Cavallaro and others testified that McKinney offered a substance, held out to be acid, for sale in one of the bedrooms of the residence. This court has held that "one who knowingly offers what purports to be a controlled substance has committed the offense of aggravated trafficking."[13] The conviction for trafficking in L.S.D. is not against the manifest weight of the evidence.
 In all of the above charges, we do not see that the jury lost its way or created a manifest miscarriage of justice. However, in regard to the conviction for trafficking in counterfeit controlled substances, we hold there was a lack of probative evidence.
There is a different standard for a conviction for trafficking counterfeit controlled substances than there is for trafficking controlled substances. This distinction was noted in State v. Lee, wherein this court quoted the Supreme Court of Ohio:
 "When appellant knowingly offered to sell Percodan, a controlled substance, his offense was complete under R.C. 2925.03(A)(1). * * * There need be no additional proof that appellant knew that the substance he was offering was not Percodan or that it was actually a counterfeit controlled substance. Proof of such knowledge and of the counterfeit character of the substance offered is necessary for a conviction under R.C. 2925.37(B). Thus, commission of the first offense will not necessarily result in commission of the second offense. The offenses are, therefore, not allied, and appellant may be convicted of both. (Emphasis sic.)"[14]
The state failed to prove that the substance involved in the proposed sale was a counterfeit controlled substance. The allegedly counterfeit L.S.D. was not offered into evidence. No expert witness testified regarding any tests that would have established that the substance was counterfeit. The only testimony presented was that of lay witnesses who merely looked at the substance and identified it as counterfeit L.S.D.
The Supreme Court of Ohio has recently held that a lay person can express their opinion as to the identification of a controlled substance if a proper foundation is laid.[15] McKee involved a lay person identifying marijuana.
The case sub judice can be distinguished from Mckee. L.S.D. is lysergic acid diethylamide.[16] Jason Cavallaro testified that there are different street names for acid depending on what kind of acid it is. These names include: jells, papers, liquids, and L.S.D. This testimony indicates that acid can come in many different forms.
Lay witnesses testified that the substance purported to be sold by McKinney was fake L.S.D. Jason Cavallaro testified that he had previously taken L.S.D. and the substance he was offered was not L.S.D. He claimed to make this determination by looking at the substance. Robin Robbins described the substance resembling crushed Tylenol. She testified that she had crushed Tylenol for her cousins, and it was white. There was also testimony from Theresa Monateri who stated that she thought McKinney and Garrett were making fake acid in the bedroom because they would not let her in.
This case can be distinguished from McKee in that McKee involved a lay witness identifying marijuana, which has a distinct color and odor, while the lay witnesses in this case were saying that the substance offered as L.S.D. did not contain the drug L.S.D. itself to make it real acid. Identifying a substance as counterfeit L.S.D. merely by looking at it from a distance is not enough to establish that it is counterfeit.
There was not sufficient evidence that the substance offered for sale was counterfeit L.S.D. Thus, the conviction for trafficking in counterfeit controlled substances is against the manifest weight of the evidence.
Having found the conviction for trafficking counterfeit controlled substances against the manifest weight of the evidence, the firearm specification must also be reversed.
McKinney's sixth assignment of error is without merit as it relates to the charges of felonious assault and the accompanying firearm specification, trafficking in L.S.D., and tampering with evidence.
McKinney's sixth assignment of error has merit as it relates to the charge of trafficking in counterfeit controlled substances and its accompanying firearm specification.
McKinney's seventh assignment of error is:
 "The trial court erred to the prejudice of the appellant by imposing the three (3) year sentences each on counts II and V of the indictment. These sentences are not the minimum sentence for the offenses."
The trial court issued three-year sentences for the convictions on the counts of felonious assault and tampering with evidence. These are not the minimum sentences for these offenses.
The trial court found both R.C. 2929.12(B)(6), the offender's relationship with the victims facilitated the offense, and R.C.2929.12(B)(7), that the defendant committed the offense as part of an organized criminal activity. For the following reasons, we hold that the trial court abused its discretion by making these findings, as they are not supported by the record.
We see no evidence that the offender's relationship with the victims facilitated the offense. Jason Cavallaro testified that he had never met McKinney before the night in question. McKinney also testified that he did not know the three individuals who arrived at his house. The only common connection between the two groups was Theresa Monateri. Further, the testimony indicated that Jason Cavallaro initiated all of the events of the evening, as Jason paged Theresa seeking acid.
In State v. Roberson, the defendant pled guilty to one count of robbery for an incident involving a purse snatching.[17] The defendant stated that he had committed a similar offense a month after he committed the offense he pled to and that he had an accomplice in both crimes. The Sixth Appellate District held that the legislature did not intend that type of criminal activity to be classified as organized criminal activity. The court further held that "[t]he mere fact that he may have had an accomplice is insufficient to constitute an `organized' crime.[18]
After Roberson, the Sixth Appellate District recently revisited this issue in State v. Martinez.[19] Martinez involved a defendant who pled guilty to four counts of trafficking marijuana. The conviction involved sales of drugs to five people over three years. The court held that the defendant was involved in organized criminal activity. The court noted that although organized criminal activity is not defined in Chapter 2929, R.C. 177.01(E)(1) defines organized criminal activity as "any violation, combination of violations, or conspiracy to commit one or more violations of section 2925.03 of the revised code."[20] The court also noted that "drug trafficking by its very nature is part of an organized criminal activity in that the seller must obtain drugs from a supplier and is only one link in the long chain of criminal activity."[21]
We distinguish this case from Martinez for the following reasons. First, McKinney was not involved in multiple drug transactions; rather, this was an isolated incident. Second, many witnesses testified that they believed the substance McKinney offered for sale was fake acid. If the substance was fake, there would arguably be no supplier or long chain of criminal activity, as McKinney could have legally obtained a variety of substances, altered them, and held them out to be acid. Finally, the two specific sentences that McKinney objects to in this assignment of error are not drug offenses.
The trial court addressed McKinney to the following findings:
 "Under R.C. 2929.12(D), you committed these offenses while you were on bail waiting sentence or under community control sanctions. That you have a history of criminal convictions or delinquency adjudications, that you have not responded favorably to previously imposed sanctions, that you have an alcoholic and/or drug abuse problem, and that you have not sought treatment in the past. That you have no genuine remorse. * * * Under 2929.13(B)(1) the court finds that this was an attempt to cause or actual threat of physical harm to a person with a weapon and that you committed that offense with a firearm."
We do not see that the trial court abused its discretion when making the findings relating to 2929.12(D) or 2929.13(B)(1). However, having held that the trial court abused its discretion in making the findings pursuant to 2929.12 (B)(6) and (7), we remand this issue to the trial court for resentencing.
McKinney's seventh assignment of error has merit.
McKinney's eighth assignment of error is:
 "The trial court erred to the prejudice of the appellant when it imposed more than one term of actual incarceration on multiple firearm specifications when they were part of the same act or transaction."
McKinney asserts that he should not have been given two sentences for the firearm specifications as they were part of a single act. Due to our finding merit in McKinney's sixth assignment of error in regards to the trafficking in counterfeit controlled substances, this assignment of error is now moot.
The judgment of the trial court is reversed in regard to the conviction of trafficking in counterfeit controlled substances and its accompanying firearm specification. The judgment of the trial court regarding the remaining convictions is affirmed. This case is remanded to the trial court for resentencing on the counts involving trafficking in LSD, tampering with evidence, and felonious assault and its accompanying firearm specification.
ROBERT A. NADER, J., concurs, JUDITH A. CHRISTLEY, J., concurs in judgment only.
[1] State v. Garrett (Aug. 23, 2002), 11th Dist. No. 2000-L-159.
[2] Terry v. Ohio (1968), 392 U.S. 1, 21.
[3] State v. Tibbetts, 92 Ohio St.3d 146, 153, 2001-Ohio-132, quotingGersteni v. Pugh (1975), 420 U.S. 1103, 111-112, quoting Beck v. Ohio
(1964), 379 U.S. 89, 91.
[4] State v. Sheppard, 84 Ohio St.3d 230, 236, 1998-Ohio-323, citingState v. George (1989), 45 Ohio St.3d 325, paragraph two of the syllabus.
[5] R.C. 2935.12.
[6] State v. Kinley, 72 Ohio St.3d 491, 497, 1995-Ohio-279.
[7] Peters v. Ohio State Lottery Comm. (1992), 63 Ohio St.3d 296, 299, citing Renfro v. Black (1990), 52 Ohio St.3d 27, 32.
[8] Evid.R. 403(A).
[9] State v. Johnson (July 3, 1997), 11th Dist. No. 96-L-012, 1997 Ohio App. LEXIS 2985.
[10] Id. at *9-12.
[11] Evid.R. 403(A).
[12] (Citations omitted.) State v. Thompkins, 78 Ohio St.3d 380, 387,1997-Ohio-52.
[13] State v. Lee (1994), 97 Ohio App.3d 197, 200.
[14] (Internal citations omitted.) Id. at 201, quoting State v. Mughni
(1987), 33 Ohio St.3d 65, 67-68.
[15] State v. McKee, 91 Ohio St.3d 292, 297, 2001-Ohio-41.
[16] R.C. 2925.03(Y).
[17] State v. Roberson (2001), 141 Ohio App.3d 626, 632.
[18] Id. at 633.
[19] State v. Martinez, 6th Dist. No. WD-01-27, 2002-Ohio-735.
[20] Id. at ¶ 58.
[21] Id. at ¶ 59.