OPINION
{¶ 1} This appeal arises from the Lake County Court of Common Pleas wherein, appellant, Angelo J. Foti ("Foti"), was convicted of two counts of corrupting another with drugs and two counts of receiving stolen property after a jury trial.
 {¶ 2} Allyson Lewis ("Allyson"), a seventeen-year-old high school student from Perry, Ohio, met Jason Foti ("Jason"), appellant's sixteen-year-old son, while the two were working together at Burger King. The two dated for a few weeks and then Allyson began dating Jason's brother and appellant's other son, seventeen-year-old Jonathan Foti ("Jonathan").
 {¶ 3} Jonathan and Allyson began spending a great deal of time together, usually at appellant's home in South Euclid, Ohio. Appellant began joining the two on a regular basis and soon the three were "hanging out" at appellant's home and smoking crack cocaine.
 {¶ 4} Allyson began spending even more time with appellant and Jonathan and, at times, spent the night at their home. Allyson testified at trial that, at one point, she stole her mother's ("Ms. Lewis") checkbook and went to appellant's home. There she told Jonathan and appellant that she had taken her mother's checkbook. Later that day, the three decided to go to a local Giant Eagle grocery store, purchase goods with one of Ms. Lewis' checks, and write the check for over the amount of the order to receive money back. After receiving the money, the three drove to Cleveland to buy crack cocaine. The three then proceeded to the J L Motel in Wickliffe, Ohio, where they smoked the crack for the remainder of the night.
 {¶ 5} That same evening, Ms. Lewis became concerned about where Allyson was. She contacted the Perry Police Department and told them she thought Allyson may be at the J L Motel and that Allyson was driving Ms. Lewis' white, four-door Chevrolet. The Perry Police contacted Officer John Thompson of the Wickliffe Police Department. Office Thompson responded to the call and proceeded to the motel. He observed Ms. Lewis' car in the parking lot. Officer Thompson ascertained which room Allyson was in and knocked on the door. When the door was opened, Officer Thompson noted that Allyson was in the room with appellant and Jonathan. Officer Thompson received social security numbers and birth dates from each individual. Officer Thompson subsequently left the motel with Allyson and took her to the police station to wait for her mother to pick her up.
 {¶ 6} The next day, Ms. Lewis and her other daughter drove to the J L Motel to pick up Ms. Lewis' car. Upon entering the car, Ms. Lewis' discovered some of her checks inside the car. One was made out to appellant in Allyson's handwriting for $65. Another check was blank except for an "L" on the signature line. Ms. Lewis then verified her checking account balance and discovered that her balance had gone from approximately $1500 to $12. Ms. Lewis confronted Allyson, who admitted to taking the checkbook and writing out checks. Allyson testified that she had subsequently returned the checkbook to her mother but first removed several additional blank checks.
 {¶ 7} The next day, appellant and Jonathan picked up Allyson from her house and the three spent much of the day with appellant's four-year-old daughter. They went to an IGA grocery store in Painesville where they again wrote a check out for more than the order to receive cash back. They then went to an Auto Zone store in Painesville where they purchased a part for a car. Finally, they went to another Auto Zone and returned the part for cash. They then took the four-year-old to the park for a few hours before returning her home.
 {¶ 8} After taking the child home, appellant, Allyson, and Jonathan drove to different places in the Cleveland area to purchase crack cocaine. After purchasing the crack cocaine, appellant drove to the Plaza Motel in Wickliffe. There, the three smoked the crack cocaine. Appellant then left to go home but left the crack cocaine with Jonathan and Allyson, who stayed in the room for several more hours.
 {¶ 9} Ms. Lewis again called the Perry Police Department. The Perry Police contacted the Wickliffe Police Department to request a search of the J L Motel. Officer Thompson again responded and went to the J L Motel to look for Allyson. After not locating her, he went to the Plaza Motel, where he found Allyson and Jonathan. Officer Thompson took Allyson into custody and transported her to a meeting place arranged with the Perry Police for transfer of custody.
 {¶ 10} After she was in the custody of the Perry Police, Officer Anthony Costello inventoried her possessions. Items recovered were parts and pieces of a tire pressure gauge, a state identification card with Allyson's name and picture but a false date of birth, a pack of lighters, two packs of cigarettes, an opened bag of scouring pads, a Giant Eagle Advantage card, a Giant Eagle receipt, an IGA grocery store receipt, and seven blank checks belonging to Ms. Lewis.
 {¶ 11} On September 8, 2000, appellant was indicted on two counts of corrupting another with drugs and two counts of receiving stolen property. Appellant waived his right to be present at his arraignment, and the trial court entered pleas of "not guilty" on his behalf to the charges as set forth in the indictment.
 {¶ 12} On November 8, 2000, the state filed a motion for grand jury testimony, seeking that the grand jury testimony of Jonathan Foti be prepared and filed under seal with the court for the trial. The state cited the fact that Jonathan was appellant's son and Jonathan gave conflicting statements as to his anticipated testimony to the state and defense counsel as the underlying reasons in support of the motion. The trial court granted the motion on November 15, 2000.
 {¶ 13} On November 16, 2000, the state filed a request for immunity of witness turning state's evidence for Jonathan Foti. The state's request was granted by the trial court on that same day.
 {¶ 14} A jury trial commenced on November 16, 2000. The state presented eight witnesses. The defense made a Crim.R. 29 motion for judgment of acquittal at the end of the state's case-in-chief. That motion was denied. Appellant did not present any evidence or witnesses on his behalf. The jury ultimately found appellant guilty on both counts of corrupting another with drugs and made a special finding as to both counts that the controlled substance was crack cocaine. Appellant was also found guilty on both counts of receiving stolen property.
 {¶ 15} On January 9, 2001, appellant was sentenced to eight years imprisonment on each of the corruption charges, to be served consecutively with each other, and one year each on both counts of receiving stolen property, to be served concurrently with each other and concurrently to the corruption charges. Appellant subsequently filed this timely appeal, citing six assignments of error.
 {¶ 16} Appellant's first assignment of error is:
 {¶ 17} "The trial court erred to the prejudice of the defendant appellant when it ordered consecutive sentences."
 {¶ 18} Appellant argues that the trial court erred in imposing sentence without stating on the record its reasons in support of the consecutive sentences pursuant to R.C. 2929.14(E) and 2929.19(B)(2)(c).
 {¶ 19} A court may impose consecutive sentences when it makes the requisite findings set forth in R.C. 2929.14(E)(4). Moreover, pursuant to R.C. 2929.19(B)(2)(c), the court must state the specific reasons for its findings on the record.
 {¶ 20} R.C. 2929.14(E)(4) reads:
 {¶ 21} "(4) If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
 {¶ 22} "(a) The offender committed the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
 {¶ 23} "(b) The harm caused by the multiple offenses was so great or unusual that no single prison term for any of the offenses committed as part of a single course of conduct adequately reflects the seriousness of the offender's conduct.
 {¶ 24} "(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender."
 {¶ 25} A review of the transcript from the sentencing hearing reveals that the trial court stated, on the record, in accordance with R.C. 2929.19(B)(2)(c), its reasons in support of consecutive sentencing. The court stated:
 {¶ 26} "The Court finds the following factors increase the seriousness of these offenses: the victim suffered serious psychological or economic harm; a 17 year old female becomes addicted to crack; the victim stole from the mother; the Defendant's relationship with the victim facilitated the offense; the victim was the girlfriend of Defendant's son; and the Defendant provided hotel rooms and crack for them, for the sons and victim. I can't possibly imagine what you had in mind in dealing with these two young people, but I know it was nothing good.
 {¶ 27} "The Court finds the Defendant is more likely to commit offenses in the future because of previous criminal history, including aggravated menacing, disorderly conduct, conspiracy to distribute cocaine, aggravated robbery, drug abuse, assault, theft, extensive criminal record."
 {¶ 28} Later, the court went further in stating:
 {¶ 29} "Then he has failed rehabilitation efforts after previous convictions; failed to respond to parole; a pattern of drug and alcohol abuse, offender refuses to acknowledge problem or accept treatment, denies that he has a substance abuse problem."
 {¶ 30} Thus, in stating on the record the underlying reasons in support of consecutive sentences, the trial court clearly comported with the requirements of R.C. 2929.19(B)(2)(c).
 {¶ 31} Regarding R.C. 2929.14(E)(4), the court was less stringent. Although the court references appellant's criminal history and notes that the reason for consecutive sentencing is because of appellant's likelihood to commit future crimes, it never specifically refers to R.C. 2929.14(E)(4) on its own accord. Rather, the prosecutor informs the court that it must make findings pursuant to R.C.2929.14(E)(4). The prosecutor then recites the statutory language and asks the court if those are its findings. The court then confirms that those are the findings of the court. This was not proper. A better practice would be for the court to specifically refer to R.C. 2929.14(E)(4) on its own accord. However, as the court adequately stated its reasons for the consecutive sentencing and confirmed its findings were in accordance with R.C. 2929.14(E)(4), we find this to constitute harmless error and appellant's first assignment of error is without merit.
 {¶ 32} Appellant's second assignment of error is:
 {¶ 33} "The trial court erred by sentencing the defendant appellant to the maximum term of imprisonment for a felony of the second-degree."
 {¶ 34} In his second assignment of error, appellant contends that the trial court failed to meet the statutory requirements of R.C.2929.14(C) and R.C. 2929.19(B)(2)(d) when imposing the maximum sentence.
 {¶ 35} Appellant received the maximum sentence authorized for all offenses. The maximum sentence authorized for corruption of another with drugs, a second degree felony, is eight years.[1] The maximum sentence authorized for receiving stolen property, a fifth degree felony, is twelve months.[2]
 {¶ 36} R.C. 2929.14(C), governing maximum sentencing, reads:
 {¶ 37} "(C) Except as provided in division (G) of this section or in Chapter 2925. of the Revised Code, the court imposing a sentence upon an offender for a felony may impose the longest prison term authorized for the offense pursuant to division (A) of this section only upon offenders who committed the worst forms of the offense, upon offenders who pose the greatest likelihood of committing future crimes, upon certain major drug offenders under division (D)(3) of this section, and upon certain repeat violent offenders in accordance with division (D)(2) of this section."
 {¶ 38} When imposing the maximum authorized sentence, the trial court must state the underlying reasons in support of the sentence pursuant to R.C. 2929.19(B)(2)(d).
 {¶ 39} At the sentencing hearing, the court made the following findings:
 {¶ 40} "The Court finds the Defendant, pursuant to revised code section 2929.14(C), that the Defendant has committed the worst form of the offense. The Defendants (sic) poses the greatest likelihood of committing future crimes."
 {¶ 41} As noted in the first assignment of error, the court stated its reasons on the record in support of maximum sentencing. Specifically, the court noted the psychological harm done to the victim, the relationship between appellant and the victim, and appellant's role in the offense, all factors to be considered when imposing the maximum sentence.[3]
 {¶ 42} The trial court made the required statutory findings and stated on the record its reasons in support of maximum sentences. Appellant's second assignment of error is without merit.
 {¶ 43} Appellant's third assignment of error is:
 {¶ 44} "The trial court erred to the prejudice of the defendant-appellant when it allowed testimony of other acts which the defendant-appellant was not charged, thus denying him due process of law."
 {¶ 45} Although not entirely clear from the language in appellant's brief, appellant is contending that the trial court erred in allowing testimony concerning appellant's prior bad acts.
 {¶ 46} Pursuant to App.R. 16(D), appellant is required to cite to specific language in the record on which his assignment of error relies. Appellant's brief cites no specific page of the transcript which contains testimony concerning appellant's prior bad acts nor does appellant's brief recount any specific statements from the record referring to prior bad acts. This court has consistently held that, if appellant fails to refer the court to specific areas in the record in support of an assignment of error, the court will not address the issue.[4] Thus, appellant's third assignment of error is without merit.
 {¶ 47} Appellant's fourth assignment of error is:
 {¶ 48} "The trial court erred when (sic) to the prejudice of the defendant appellant when it allowed them what (sic) to lay witnesses (sic) and when to express (sic) their opinion on the identity of a controlled substance and without properly laying a foundation for this testimony."
 {¶ 49} It appears that appellant is arguing that the trial court erred in allowing Allyson and Jonathan to testify, as lay witnesses without a proper foundation, regarding smoking crack cocaine with appellant.
 {¶ 50} The Supreme Court of Ohio has recently held that lay witnesses can express an opinion on the identity of a controlled substance provided a proper foundation is established.[5] In McKee, the court held: "courts have permitted lay witnesses to express their opinions in areas in which it would ordinarily be expected that an expert must be qualified under Evid.R. 702. *** These cases are not based on specialized knowledge within the scope of Evid.R. 702, but rather are based upon a layperson's personal knowledge and experience."[6]
 {¶ 51} Thus, a layperson can provide opinion testimony regarding the identity of controlled substances provided the opinion is based upon a sufficient foundation of experience and knowledge of the substance at issue.
 {¶ 52} In the instant case, testimony was elicited from Allyson regarding whether it was crack cocaine that she had smoked with appellant and Jonathan. When asked to describe the appearance of crack cocaine, Allyson testified, "[i]t's small like white colored rocks, some are little, some are bigger." Allyson further testified as to how the crack cocaine was smoked using various paraphernalia. She also testified that she had smoked crack cocaine in the past, and she described the "high" she got from it and how this was the same "high" she experienced while smoking the crack cocaine with appellant and Jonathan in the past.
 {¶ 53} Later, Jonathan gave similar testimony including a description of what crack cocaine looked like and the type of "high" he has experienced from crack cocaine in the past as well on the evening he smoked it with his father and Allyson.
 {¶ 54} Applying the holding of McKee to the facts of this case, we find that the evidence was sufficient to show that Allyson was qualified to testify as a lay witness regarding the identification of the crack cocaine.
 {¶ 55} Appellant's fourth assignment of error is without merit.
 {¶ 56} Appellant's fifth assignment of error is:
 {¶ 57} "The trial court here (sic) in allowing testimony from a witness who was given the immunity for prosecution and without one (sic) following proper procedure."
 {¶ 58} In his fifth assignment of error, appellant argues that the trial court erred in granting immunity to Jonathan. Specifically, appellant argues that Jonathan "did not have a valid Fifth Amendment privilege against self-incrimination upon which to base the immunity."
 {¶ 59} R.C. 2945.44 governs the granting of transactional immunity, and reads, in pertinent part:
 {¶ 60} "(A) In any criminal proceeding in this state or in any criminal or civil proceeding brought pursuant to sections 2923.31 to2923.36 of the Revised Code, if a witness refuses to answer or produce information on the basis of his privilege against self-incrimination, the court of common pleas of the county in which the proceeding is being held, unless it finds that to do so would not further the administration of justice, shall compel the witness to answer or produce the information, if both of the following apply:
 {¶ 61} "(1) The prosecuting attorney of the county in which the proceedings are being held makes a written request to the court of common pleas to order the witness to answer or produce the information, notwithstanding his claim of privilege;
 {¶ 62} "(2) The court of common pleas informs the witness that by answering, or producing the information he will receive immunity under division (B) of this section."
 {¶ 63} Thus, the procedure for granting immunity as codified in R.C. 2945.44, requires that when a witness refuses to answer a question at trial and invokes the Fifth Amendment privilege against self-incrimination, the court of common pleas shall compel the testimony of a witness if both of the following apply the prosecutor makes a written request to the court of common pleas to order the witness toanswer notwithstanding the claim of privilege and the court of commonpleas informs the witness on the record that by answering, the witnesswill receive immunity. Moreover, before granting immunity, the commonpleas court must also determine, in its discretion, whether theprosecutor's request for immunity would further the administration ofjustice.[7]
 {¶ 64} Although appellant asserts that Jonathan had no Fifth Amendment privilege against self-incrimination, he fails to elaborate on this point. We find that Jonathan possessed a valid Fifth Amendment privilege against self-incrimination. Although a juvenile, it is well-established that the constitutional privilege against self-incrimination applies in juvenile cases.[8] Moreover, the trial court followed the proper procedure in granting Jonathan immunity. The state filed a written request seeking immunity for Jonathan on November 16, 2000. The trial court granted that request on the same day.
 {¶ 65} In addition, the trial court informed Jonathan, on the record:
 {¶ 66} "Upon consideration and for good cause shown, the Court finds said request [for immunity] to be well taken and will further the administration of justice. The Court informs the witness that by answering or producing the information he will receive immunity under Division (B) of 2945.44. Specifically, John Foti shall not be prosecuted or subjected to any criminal penalty through the courts of this state for or on account of any transaction or matter concerning which, in compliance with this order, he gave an answer or produced any information."
 {¶ 67} Thus, we find that the trial court properly granted Jonathan immunity in accordance with R.C. 2945.44, and appellant's fifth assignment of error is without merit.
 {¶ 68} Appellant's sixth assignment of error is:
 {¶ 69} "The defendant's (sic) appellant's (sic) was deprived of due process of law any statutory right to be represented by counsel as a result of his trial counsel's ineffective assistance."
 {¶ 70} Appellant argues in his sixth assignment of error that his trial counsel was inefficient and that appellant essentially received "no representation during his trial and sentencing hearing."
 {¶ 71} To establish a claim for ineffective assistance of counsel, this court has held that defendant must prove that counsel's performance fell below an objective standard of reasonable representation and prejudice arises from counsel's performance.[9]
 {¶ 72} "[C]ounsel is `strongly presumed' to have rendered adequate assistance, and `the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."'"[10]
 {¶ 73} Appellant fails to cite to any specific testimony in the transcript or any area in the record in which trial counsel was ineffective. Rather, appellant argues that counsel was ineffective for "failure to object to numerous inconsistencies, and failure to put on the record the trial court the trial judge's leading of the bench during the trial." This language alone, absent any clear reference to the record is in violation of App.R. 16, and, thus, this court will not address this assignment of error.
 {¶ 74} Appellant's sixth assignment of error is without merit.
 {¶ 75} The judgment of the trial court is affirmed.
DONALD R. FORD and DIANE V. GRENDELL, JJ., concur.
[1] R.C. 2929.14(A)(2).
[2] R.C. 2929.14(A)(5).
[3] R.C. 2929.12(B).
[4] Tresler v. Derby (Dec. 10, 1993), 11th Dist. No. 93-P-0001, 1993 Ohio App. LEXIS 5888, at *11; Stellato v. Stellato (Mar. 19, 1993), 11th Dist. No. 92-G-1700, 1993 Ohio App. LEXIS 1574, at *13; Harrow v. Harrow
(Nov. 20, 1992), 11th Dist. No. 91-T-4516, 1992 Ohio App. LEXIS 5819, at *12.
[5] State v. McKee, 91 Ohio St.3d 292, 2001-Ohio-41, syllabus.
[6] Id. at 296-297.
[7] State ex rel. Ney v. Niehaus (1987), 33 Ohio St.3d 118.
[8] Juv.R. 29(D)(2).
[9] State v. Schlee (Dec. 23, 1994), 11th Dist. No. 93-L-082, 1994 Ohio App. LEXIS 5862, at *30, quoting Strickland v. Washington (1984),46 U.S. 668, 687.
[10] State v. Smith (1985), 17 Ohio St.3d 98, 100, quoting Stricklandv. Washington (1984), 466 U.S. 668, 694-695, quoting Michel v. Louisiana
(1955), 350 U.S. 91, 101.