[This decision has been published in *Ohio Official Reports* at 91 Ohio St.3d 292.]

THE STATE OF OHIO, APPELLANT, *v*. MCKEE, APPELLEE.

[Cite as *State v. McKee*, 2001-Ohio-41.]

*Evidence—Witnesses—Experience and knowledge of a drug user lay witness can establish competence to express an opinion on the identity of a controlled substance, when.*

(Nos. 00-523 and 00-953—Submitted December 12, 2000—Decided April 11, 2001.)

APPEAL from and CERTIFIED by the Court of Appeals for Marion County, No. 9-99-57.

_____

SYLLABUS OF THE COURT

The experience and knowledge of a drug user lay witness can establish his or her competence to express an opinion on the identity of a controlled substance if a foundation for this testimony is first established.

_____

FRANCIS E. SWEENEY, SR., J.

{¶ 1} Defendant-appellee, Cassandra N. McKee, was indicted on two counts of corrupting another with drugs, in violation of R.C. 2925.02. At her trial, two girls, Tiffany Friar and Melissa Austin, ages thirteen and fourteen at the time of the alleged crime, testified that appellee, the girlfriend of Tiffany's father, shared a marijuana joint with them while they were traveling in appellee's car.

{¶ 2} The incident was discovered when Tiffany wrote a note to another friend, Stacy Cole, and mentioned that she might obtain marijuana from appellee. Stacy's mother found this note in Stacy's bookbag and gave it to Tiffany's mother. Tiffany's mother contacted the sheriff's department. An investigation ensued, and

these charges were brought against appellee.  Based upon this evidence, the jury convicted appellee as charged.

**{¶ 3}** Upon appeal, the court of appeals reversed appellee's convictions, finding no evidence that the substance involved was marijuana after excluding the girls' testimony identifying it.  However, finding its judgment in conflict with that of the Fifth District Court of Appeals in *State v. Coffey* (Oct. 16, 1995), Delaware App. No. 94CAA11036, unreported, 1995 WL 770788 (where the court upheld the use of lay testimony to prove that a substance furnished to minors was marijuana), the appellate court entered an order certifying a conflict.  The cause is now before this court upon our determination that a conflict exists (case No. 00-953) and pursuant to the allowance of a discretionary appeal (case No. 00-523).

**{¶ 4}** The appellate court certified the following issue for our review and resolution:  "Is there insufficient evidence as a matter of law to convict a defendant for corrupting another with drugs in violation of R.C. 2925.02, when the alleged drug in question is marihuana, and at trial there is no expert witness or laboratory analysis presented to identify the substance alleged to be marihuana, and the only identification of the substance is the testimony of the juveniles who allegedly smoked the substance?"  While we affirm the court of appeals' decision reversing appellee's convictions, we do not believe the issue as framed is dispositive of the case.  Because we believe that lay opinion testimony, if properly qualified, may be sufficient to sustain a conviction, we necessarily answer the certified question in the negative.

**{¶ 5}** Appellee was convicted of two counts of corrupting another with drugs in violation of R.C. 2925.02(A)(4)(a), which provides, "No person shall knowingly * * * [f]urnish or administer a controlled substance to a juvenile who is at least two years the offender's junior, when the offender knows the age of the juvenile or is reckless in that regard."  Of these elements, the only one in dispute is that the substance in issue was marijuana, a controlled substance according to R.C.

3719.41 Schedule I, (C)(17).  The state offered the testimony of the girls to prove this element of the offense.

{¶ 6} Appellant, the state of Ohio, initially contends that this issue was not preserved for appeal because the defense failed to object to the girls' testimony at trial or to raise the issue before the court of appeals.  Errors that arise during a trial that are not brought to the attention of the court are ordinarily waived and may not be raised on appeal unless there is plain error, *i.e.,* but for the error, the outcome of the trial clearly would have been otherwise.  Crim.R. 52(B); *State v. Johnson* (2000), 88 Ohio St.3d 95, 111, 723 N.E.2d 1054, 1069.  We find this case appropriate for a plain-error review.  Because there was no additional evidence concerning the identification of the substance, the result of the trial would have been different if the girls' testimony had been excluded.

{¶ 7} Having determined that the issue is properly before us pursuant to the plain-error rule, we must decide whether a person can be convicted for corrupting another with drugs, in violation of R.C. 2925.02, based on identification of the controlled substance solely by the person to whom the substance was given.

{¶ 8} The state argues that under either Evid.R. 701 or Evid.R. 702, the girls' testimony was properly admitted.  Appellee, however, maintains that according to *State v. Maupin* (1975), 42 Ohio St.2d 473, 71 O.O.2d 485, 330 N.E.2d 708, Ohio law requires either laboratory analysis or other expert testimony to prove the identity of the drug.  Since the record does not establish that the girls were more than novice users, they could not be considered experts.  Thus, in the absence of laboratory testing or expert testimony, appellee argues, the state failed to prove its case.

{¶ 9} *Maupin* does not fully answer the issue here. In *Maupin,* the court was asked to decide whether scientific analysis is required for the identification of the substance.  In concluding that it is not, the court first determined that a drug may be identified by circumstantial evidence.  *Id.*, 42 Ohio St.2d at 479, 71 O.O.2d at

488-489, 330 N.E.2d at 713. Yet the court recognized that the identity of a controlled substance is beyond the common experience and knowledge of juries. *Id.* At the time *Maupin* was decided, the Rules of Evidence, which govern lay and expert testimony, had yet to be adopted. Therefore, the court followed the established common law and held that expert testimony in some form is required. In this regard, the court considered cases where experienced police officers or drug addicts had been found to be experts and cases where casual drug use was found insufficient for qualification. Based upon these cases, the court concluded that the police officer's testimony in question was properly admitted as expert testimony. *Id.*

{¶ 10} However, since the adoption of the Rules of Evidence, both on the state and federal levels,[1] many courts have used an Evid.R. 701 analysis and have allowed lay witnesses to testify about the identity of a drug. For example, in *United States v. Westbrook* (C.A.8, 1990), 896 F.2d 330, the court permitted lay testimony from two witnesses who used the substance at issue and had extensive experience with that type of drug. See, also, *United States v. Osgood* (C.A.5, 1986), 794 F.2d 1087, 1095 (prior use); *United States v. Harrell* (C.A.11, 1984), 737 F.2d 971, 978 (prior use). See, also, *State v. Watson* (1989), 231 Neb. 507, 514, 437 N.W.2d 142,

---

1. Ohio Evid.R. 701 parallels Fed.R.Evid. 701 before its recent December 2000 amendment. Fed.R.Evid. 701 was amended to "eliminate the risk that the reliability requirements set forth in Rule 702 will be evaded through the simple expedient of proffering an expert in lay witness clothing." Note of the Judicial Conference Committee on Rules of Practice and Procedure, reprinted in 192 F.R.D. 402, 416. The amendment provides: "If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue*, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.*" The italicized portion of the rule is new. The amendment now serves to channel testimony that is actually expert testimony to Fed.R.Evid. 702 and ensures that a party will not evade disclosure of expert witnesses by simply calling an expert witness in the guise of a layperson. Committee Note, *supra*, 192 F.R.D. at 416. However, the amendment is not intended to affect either the prototypical types of evidence contemplated by Fed.R.Evid. 701 or, more important, the cases that have permitted lay witnesses to testify that a particular substance appeared to be a narcotic. Committee Note, *supra*, 192 F.R.D. at 417.

146 (lay witness's identification of drugs is common); *Swain v. State* (Okla.Crim.App.1991), 805 P.2d 684, 685-686 (lay testimony sufficient to identify marijuana). Courts have considered familiarity with effects of a drug coupled with similar effects from the substance at issue. See, *e.g.*, *State v. Chatman* (La.App.1992), 599 So.2d 335, 347; *People v. Garcia* (1985), 166 Cal.App.3d 1056, 1066, 212 Cal.Rptr. 822, 827. Finally, see *State v. Haller* (1987), 178 W.Va. 642, 645, 363 S.E.2d 719, 722 (recognizing that many federal courts have held that drug abusers or addicts may possess sufficient qualifications to identify narcotics). All these cases, however, recognize the importance of a foundation of sufficient familiarity with the substance to support the opinion. To understand why a foundation is necessary before this testimony is admitted, it is important to consider the language of Evid.R. 701 and its jurisprudence.

{¶ 11} Evid.R. 701 provides:

"If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of his testimony or the determination of a fact in issue."

{¶ 12} At common law, lay witnesses were required to testify to facts rather than opinions. However, the practical possibility of distinguishing between fact and opinion proved to be elusive, if not impossible to draw, and led to extensive litigation and pervasive criticism by commentators. Blanchard & Chin, Identifying the Enemy in the War on Drugs: A Critique of the Developing Rule Permitting Visual Identification of Indescript White Powder in Narcotics Prosecutions (1998)*,* 47 Am.U.L.Rev. 557, 575; *Asplundh Mfg. Div. of Asplundh Tree Expert Co. v. Benton Harbor Eng.* (C.A.3, 1995), 57 F.3d 1190, 1195. Consequently, former Fed.Evid.R. 701, upon which Ohio Evid.R. 701 is based, was adopted, and it "obviated the common law requirement for rigid compartmentalization of lay witness testimony into fact or opinion." 47 Am.U.L.Rev. at 575. Although at first

Evid.R. 701 contemplated testimony about such ordinary things as the color, speed, type of vehicle, identity of a person, a person's health, age, or appearance, or even testimony regarding a person's sanity or intoxication under controlled situations, Weissenberger, Ohio Evidence 2001 Courtroom Manual (2000)*,* 275, as case law developed, the rule was interpreted to allow for " ' "shorthand renditions" of a total situation, or [for] statements of collective facts.' " *Asplundh Mfg.,* 57 F.3d at 1196, quoting 1 McCormick, Evidence (4 Ed.1992) 44, fn. 16. Although the line between fact and opinion began to blur, all these situations met the core requirements—that the opinion is rationally based upon personal knowledge and is helpful to the trier of fact. *Id.* at 1198. Moving further from this core of "shorthand statements," courts began to permit witnesses with firsthand knowledge to offer lay opinion testimony "where they have a reasonable basis – grounded either in experience or specialized knowledge – for arriving at the opinion expressed." *Id.* at 1198*.* Before this type of opinion testimony has been allowed, however, the trial court has made an initial determination that the witness possessed sufficient experience or specialized knowledge, thus satisfying the rule's requirements that the opinion be both "helpful to a clear understanding * * * of a fact in issue" and "rationally based" upon the witness's perception. *Id.*

{¶ 13} It is consistent with this emerging view of Evid.R. 701 that courts have permitted lay witnesses to express their opinions in areas in which it would ordinarily be expected that an expert must be qualified under Evid.R. 702. The situation presented in this case fits into this classification. Although these cases are of a technical nature in that they allow lay opinion testimony on a subject outside the realm of common knowledge, they still fall within the ambit of the rule's requirement that a lay witness's opinion be rationally based on firsthand observations and helpful in determining a fact in issue. These cases are not based

6

on specialized knowledge within the scope of Evid.R. 702,[2] but rather are based upon a layperson's personal knowledge and experience.

{¶ 14} We follow this line of cases and hold that the experience and knowledge of a drug user lay witness can establish his or her competence to express an opinion on the identity of a controlled substance if a foundation for this testimony is first established. This meets the requirements of Evid.R. 701. It is testimony rationally based on a person's perceptions and helpful to a clear understanding of a fact in issue.

{¶ 15} Applying our holding to the facts of this case, we find that the evidence was insufficient to show that the girls were qualified to testify as lay witnesses. Their testimony was sketchy and conclusory. Melissa testified that she "assumed it was" marijuana without explaining in detail how she arrived at this conclusion. There was no evidence as to how many prior experiences the girls had

---

2. Evid.R. 702 provides:

"A witness may testify as an expert if all of the following apply:

"(A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;

"(B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;

"(C) The witness' testimony is based on reliable scientific, technical, or other specialized information. To the extent that the testimony reports the result of a procedure, test, or experiment, the testimony is reliable only if all of the following apply:

"(1) The theory upon which the procedure, test, or experiment is based is objectively verifiable or is validly derived from widely accepted knowledge, facts, or principles;

"(2) The design of the procedure, test, or experiment reliably implements the theory;

"(3) The particular procedure, test, or experiment was conducted in a way that will yield an accurate result."

In contrast to Evid.R. 701, Evid.R. 702 authorizes expert testimony. Weissenberger, Ohio Evidence 2001 Courtroom Manual (2000) 281. It establishes standards to be applied in determining whether expert testimony should be admitted, and it provides criteria for determining whether a witness should be accorded expert status by the trial court. *Id.* "[T]he Rule also sets forth the general standard that expert testimony must be reliable, and then narrows this broad standard by applying specific criteria to be used in ascertaining the reliability of expert testimony concerning the results of tests, studies and scientific procedures." *Id.* The distinction between lay and expert witness opinion testimony is that lay testimony "results from a process of reasoning familiar in everyday life," while expert testimony "results from a process of reasoning which can be mastered only by specialists in the field." *State v. Brown* (Tenn.1992), 836 S.W.2d 530, 549.

had with the drug. While the girls testified that the marijuana was in a "joint" form, neither girl testified as to the actual appearance of the drug itself. Moreover, while Melissa testified in general terms as to the effects of marijuana, she did not explicitly say whether she experienced those effects this time. We conclude that there was an insufficient foundation of experience or knowledge to support their opinions. Without a proper foundation, this evidence should have been excluded. The trial court abused its discretion in permitting this lay opinion testimony. Once the evidence is excluded, there is no remaining evidence of this element of the crime. When evidence of an element of the crime is deemed insufficient on appeal, the conviction must be reversed. Plain error requires us to affirm the court of appeals' judgment reversing appellant's convictions.

*Judgment affirmed.*

MOYER, C.J., DOUGLAS, RESNICK, PFEIFER and LUNDBERG STRATTON, JJ., concur.

COOK, J., dissents.

_____

**COOK, J., dissenting.**

{¶ 16} I am in substantial agreement with the rule that the majority announces today. Under Evid.R. 701, a properly qualified lay witness may render an opinion on the identity of a controlled substance. And properly admitted lay opinion testimony may provide sufficient evidence of a substance's identity to support a conviction for corrupting another with drugs. Despite my agreement with these principles, however, I am unable to concur in the ultimate decision to reverse McKee's conviction on the ground that the trial court committed plain error in allowing lay opinion testimony lacking the requisite foundation. I would find no plain error in this case and take this opportunity to clarify the contours of the plain-error doctrine.

**{¶ 17}** Ordinarily, the failure to lodge a timely objection to the admission of testimony results in the forfeiture of any claimed error.  See, *e.g.*, *State v. Allen* (1995), 73 Ohio St.3d 626, 633, 653 N.E.2d 675, 684.[3]  Crim.R. 52(B) tempers the harsh consequences of failing to object by stating, "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."  The rule is identical to Fed.R.Crim.P. 52(b), which the United States Supreme Court has described as a " 'careful balancing of our need to encourage all trial participants to seek a fair and accurate trial the first time around against our insistence that obvious injustice be promptly redressed.' " *United States v. Young* (1985), 470 U.S. 1, 15, 105 S.Ct. 1038, 1046, 84 L.Ed.2d 1, 12-13, quoting *United States v. Frady* (1982), 456 U.S. 152, 163, 102 S.Ct. 1584, 1592, 71 L.Ed.2d 816, 827.  This court has repeatedly stated that plain error under Crim.R. 52(B) will not exist unless we can conclude that but for the error, the outcome of the trial would clearly have been otherwise.  See, *e.g.*, *State v. Lindsey* (2000), 87 Ohio St.3d 479, 482, 721 N.E.2d 995, 1001; *State v. Moreland* (1990), 50 Ohio St.3d 58, 62, 552 N.E.2d 894, 899; *State v. Long* (1978), 53 Ohio St.2d 91, 7 O.O.3d 178, 372 N.E.2d 804, paragraph two of the syllabus.  Accordingly, appellate courts should not take notice of an error, no matter how clear, if the error had no bearing on the outcome of the trial.

---

3. We have often referred to the failure to object as a waiver of any error.  A failure to object, however, is more accurately characterized as a forfeiture.  See *United States v. Olano* (1993), 507 U.S. 725, 733, 113 S.Ct. 1770, 1777, 123 L.Ed.2d 508, 519.  "Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the 'intentional relinquishment or abandonment of a known right.' " *Id.*, quoting *Johnson v. Zerbst* (1938), 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461, 1466.  While waiver and forfeiture are not the same, courts "have so often used them interchangeably that it may be too late to introduce precision." *Freytag v. Commr. of Internal Revenue* (1991), 501 U.S. 868, 894, 111 S.Ct. 2631, 2647, 115 L.Ed.2d 764, 790, fn. 2 (Scalia, J., concurring).  Nevertheless, the distinction retains some significance in the context of Crim.R. 52(B).  A right that is waived in the true sense of that term cannot form the basis of any claimed error under Crim.R. 52(B). *Olano*, 507 U.S. at 733, 113 S.Ct. at 1777, 123 L.Ed.2d at 519.  On the other hand, mere forfeiture does not extinguish a claim of plain error under Crim.R. 52(B). *Id.*

{¶ 18} Today, the majority finds an outcome-determinative error in the admission of lay opinion testimony and decides that the plain-error doctrine "requires us to" uphold the court of appeals' reversal of McKee's conviction. But the outcome-determinative nature of an error is not the only factor to consider in deciding whether to notice the error under Crim.R. 52(B). To the contrary, the prejudicial nature of the forfeited error is only one element to be satisfied before the appellate court may correct the error.

{¶ 19} In *United States v. Olano* (1993), 507 U.S. 725, 113 S.Ct. 1770, 123 L.Ed.2d 508, the United States Supreme Court clarified the standard for plain-error review under Fed.R.Crim.P. 52(b). The court explained that three limitations circumscribe an appellate court's decision whether to correct an error absent a timely objection by the defendant at trial. First and most fundamentally, there must be error, *i.e.,* a deviation from a legal rule. *Id.* at 732-733, 113 S.Ct. at 1777, 123 L.Ed.2d at 518. Second, the error must be plain. To be plain, the error must be " 'clear' or, equivalently, 'obvious.' " *Id.* at 734, 113 S.Ct. at 1777, 123 L.Ed.2d at 519, citing *Young*, 470 U.S. at 17, 105 S.Ct. at 1047, 84 L.Ed.2d at 13, fn. 14. Third, the error must affect substantial rights. In most cases, this means that the error must have affected the outcome of the trial. *Olano*, 507 U.S. at 734, 113 S.Ct. at 1777-1778, 123 L.Ed.2d at 519-520.

{¶ 20} Even if a forfeited error satisfies these three prongs, however, an appellate court need not correct it. By its very terms, Crim.R. 52(B) is discretionary; a reviewing court "may" notice plain errors but is not obliged to do so. *Id.* at 735, 113 S.Ct. at 1778, 123 L.Ed.2d at 520. We have recognized this discretionary aspect of the rule by instructing courts to take notice of plain error "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *Long* at paragraph three of the syllabus; see, also, *Young*, 470 U.S. at 15, 105 S.Ct. at 1046, 84 L.Ed.2d at 12. *Olano* further explained that an appellate court should exercise its discretion to correct plain errors affecting

substantial rights "if the error 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.' " *Olano*, 507 U.S. at 736, 113 S.Ct. at 1779, 123 L.Ed.2d at 521, quoting *United States v. Atkinson* (1936), 297 U.S. 157, 160, 56 S.Ct. 391, 392, 80 L.Ed. 555, 557. At a minimum, appellate courts "should no doubt correct a plain forfeited error that causes the conviction or sentencing of an actually innocent defendant." *Id.* But plain-error correction under Crim.R. 52(B) is not limited to cases of actual innocence. *Id.*

{¶ 21} I would adopt the *Olano* method of analyzing when to correct plain error under Crim.R. 52(B). *Olano*'s framework is true to the text of the rule, which by its very terms circumscribes the authority of an appellate court to correct plain error. *Olano*, 507 U.S. at 732, 113 S.Ct. at 1776, 123 L.Ed.2d at 518. In contrast, an analytic framework *requiring* reviewing courts to correct an outcome-determinative forfeited error ignores two vital limitations embodied in Crim.R. 52(B)'s text: the type of error ("plain") that can be corrected and the court's discretion (plain errors "may be noticed") in deciding whether to correct it.

{¶ 22} Utilizing the *Olano* framework, I would conclude that reversal is not warranted in this case. Under the rule announced by the majority today, the admission of lay opinion testimony concerning the identity of a controlled substance is erroneous unless the proponent of the testimony establishes a proper foundation for it. This rule arguably establishes the first prong of the *Olano* plain-error analysis, *i.e.*, an error having been committed. This case fails to satisfy *Olano*'s second prong, however, because the error recognized by the majority is not plain. To be plain, an error must be obvious in light of the law at the time of appeal. See *Johnson v. United States* (1997), 520 U.S. 461, 467-468, 117 S.Ct. 1544, 1549, 137 L.Ed.2d 718, 727-728; accord *State v. Marple* (1996), 197 W.Va. 47, 53, 475 S.E.2d 47, 53 (applying *Olano*). But the rule announced today was not clear at the time of appeal; to the contrary, there was a conflict in the districts (concerning the admissibility of lay opinion testimony identifying a controlled

substance) that was unresolved until this court's decision today. And the court of appeals cited no controlling decision from its own district establishing that the admission of the girls' testimony was error. Several federal appellate courts applying the *Olano* analysis have held that an error cannot be deemed plain if there is no controlling case law on point and the authority in other circuits is split. See, *e.g.*, *United States v. Aguillard* (C.A.11, 2000), 217 F.3d 1319, 1321; *United States v. Thompson* (C.A.9, 1996), 82 F.3d 849, 855; *United States v. Alli-Balogun* (C.A.2, 1995), 72 F.3d 9, 12; *United States v. Williams* (C.A.6, 1995), 53 F.3d 769, 772. Simply put, if the law is unclear on a particular issue at the time of trial and remains that way at the time of appeal, the error cannot be plain and should not be noticed under Crim.R. 52(B). See *United States v. David* (C.A.4, 1996), 83 F.3d 638, 642-643. As the *David* court explained:

"If the contemporaneous objection requirement is to have any real force, presumably an objection would be required * * * in the circumstance where the law at the time of trial is unclear as to whether the [trial] court's proposed course would constitute error. A timely objection in such a circumstance would provide the court an opportunity to consider the question, possibly avoid the commission of an error, and thereby prevent the need for retrial upon appellate reversal—the very purposes of the contemporaneous objection rule." (Footnote omitted.) *Id.* at 643.

{¶ 23} In this case, it was not clear either at the time of trial or by the time of the direct appeal that the girls' testimony identifying marijuana was inadmissible.[4] I therefore cannot join in the majority's determination that the trial

---

4. The *David* court distinguished the situation where the law was clear at the time of trial (and contrary to the defendant's position on appeal), but changed by the time of appeal by a supervening decision. In that instance, the *David* court held that an error would be deemed plain "where an objection at trial would have been indefensible because of existing law, but a supervening decision prior to appeal reverses that well-settled law, rendering the defendant's claim clearly meritorious." 83 F.3d at 645. The United States Supreme Court adopted this view in *Johnson*, holding that "in a case * * * where the law at the time of trial was settled and clearly contrary to the law at the time of appeal[,] it is enough that an error be 'plain' at the time of appellate consideration." *Johnson v.*

court committed plain error by failing to follow a rule that was not definitively announced until today.

{¶ 24} I would adopt the *Olano* framework for analyzing plain error under Crim.R. 52(B) and find that any error committed by the trial court in this case was not plain.

———————

*Jim Slagle,* Marion County Prosecuting Attorney, for appellant.

*Daniel E. Shifflet & Co., L.P.A.,* and *Kevin P. Collins,* for appellee.

———————

---

*United States*, 520 U.S. at 468, 117 S.Ct. at 1549, 137 L.Ed.2d at 727-728.  This case presents no such situation.