[Cite as *State v. Johnson*, 2014-Ohio-4032.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
GALLIA COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | Case No. 13CA16 |
| | : | |
| Plaintiff-Appellee, | : | |
| | : | |
| vs. | : | |
| | : | DECISION AND JUDGMENT |
| VICKEY J. JOHNSON | : | ENTRY |
| | : | |
| Defendant-Appellant. | : | **Released: 09/10/14** |

_____

APPEARANCES:

Timothy P. Gleeson, Logan, Ohio, for Appellant.

Adam R. Salisbury, Gallipolis City Solicitor, Gallipolis, Ohio, for Appellee.
_____

McFarland, J.

{¶1} Vickey J. Johnson (Appellant), appeals her conviction for possession of drugs, in violation of R.C. 2925.11(A)/(C)(2)(a) after a bench trial in the Gallipolis Municipal Court. Appellant's counsel has advised this Court that, after reviewing the record, he cannot find a meritorious claim for appeal. As a result, Appellant's counsel has moved to withdraw under *Anders v. California,* 386 U.S. 738, 87 S.Ct. 1396 (1967). We find no merit to Appellant's two assignments of error and, after independently reviewing the record, find no additional error prejudicial to the Appellant's rights in the trial court proceedings. The motion of counsel for Appellant requesting to

withdraw as counsel is granted, and this consolidated appeal is dismissed for the reason that it is wholly frivolous.

FACTS

{¶2} On October 2, 2013, Appellant was found guilty of possession of drugs, in violation of R.C. 2925.11(A)/(C)(2)(a), after a bench trial in the Gallipolis Municipal Court. The charge arose from an incident which occurred on June 15, 2013. On that date, Trooper Wilson of the Ohio State Highway Patrol noticed a disabled vehicle on U.S. Route 35 in Gallia County, Ohio. After running the license plate registration through dispatch, Trooper Wilson was advised Appellant, the registered owner of the vehicle, had an outstanding misdemeanor warrant in Gallia County.

{¶3} Trooper Wilson approached the disabled vehicle and arrested Appellant on the misdemeanor warrant. He asked Appellant if she wanted to take her purse with her and Appellant assented. Trooper Wilson eventually searched inside and found half a Hydrocodone tablet.[1] Appellant indicated the purse belonged to her daughter, Angela Massey, and denied knowing a pill bottle was in the purse. Nevertheless, Appellant was charged with possession of drugs, a misdemeanor of the first degree.

---

[1] The record is not entirely clear but it appears the search was consensual. Appellant has raised no issue in this regard.

{¶4} Appellant was arraigned on June 17, 2013, and entered a not guilty plea. She was appointed legal counsel and eventually proceeded to a bench trial, wherein Appellant and Trooper Wilson were the only testifying witnesses. The trial court found Appellant had constructive possession of the purse and found her guilty.

{¶5} Appellant was sentenced to one year of probation (community control), a $100.00 fine, and a six-month driver's license suspension. She was also ordered to pay court costs and a supervision fee. Appellant now appeals the conviction and November 6, 2013 sentencing order.

{¶6} This appeal is timely filed. We have allowed Appellant sufficient time to respond to counsel's brief. To date, no response has been received.

## A. FINAL APPEALABLE ORDER

{¶7} Our review pursuant to *Anders* requires a full examination of the trial court proceedings. In the case sub judice, the record reveals Appellant appeals the November 6, 2013, "Sentence Entry." This entry states in bold: "**Defendant entered a plea of Guilty. Defendant found Guilty.**" This is not a correct notation of what actually transpired, as Appellant had a bench trial. Attached to this entry, however, is another document dated October 2, 2013, which indicates the trial court found the defendant guilty after trial.

This document appears to be a hearing notice because it sets forth a sentencing date of November 6, 2013. Initially, these documents raise some concern regarding the finality of the November 6, 2013 order.

{¶8} A court of appeals has no jurisdiction over orders that are not final and appealable. *State v. Smith,* 4th Dist. Highland No. 10CA13, 2011-Ohio-1659, ¶3, citing Section 3(B)(2), Article IV, Ohio Constitution ("Courts of appeals shall have such jurisdiction to review and affirm, modify, or reverse judgments or final orders of the courts of record inferior to the courts of appeals within the district * * *"); see, also, R.C. 2953.02. We are required to *sua sponte* raise jurisdictional issues when they become apparent. See, e.g., *In re B.J.G.* 4th Dist. Adams No. 10CA894, 2010-Ohio-5195, at ¶6.

{¶9} In *State v. Lester,* 130 Ohio St.3d 303, 2011-Ohio-5204, 958 N.E.2d 142, at ¶14, the court held a judgment of conviction is a final order subject to appeal under R.C. 2505.02 when the judgment entry sets forth (1) the fact of the conviction, (2) the sentence, (3) the judge's signature, and (4) the time stamp indicating the entry upon the journal by the clerk. Resolution of the issues set forth in *Lester* required a discussion of Crim.R. 32(C) and the Supreme Court of Ohio's decision in *State v. Baker,* 119 Ohio St.3d 197, 2008-Ohio-3330, 893 N.E.2d 163. *Lester* modified the holding in *Baker,* to

the extent that *Baker* had implied or had been interpreted to require, that more than the fact of the conviction, the substantive provisions of Crim.R. 32(C), i.e. the "manner of conviction" must also be set out in the judgment entry of conviction before it becomes a final order.[2]

{¶10} As noted above, the November 6, 2013 entry incorrectly indicates Appellant entered a plea of guilty. However, it does set forth the fact of conviction. The fact that a judgment entry of conviction does not indicate how the defendant's conviction was effected - by a guilty plea, a no-contest plea upon which the court has made a finding of guilty, a finding of guilty based upon a bench trial, or a guilty verdict resulting from a jury trial - does not prevent the order from being final. *State v. Shepherd,* 4th Dist. Scioto No. 12CA3469, 2012-Ohio-5631, ¶11; *Lester, supra,* at ¶16. Despite the error setting forth the manner of conviction, there is the "fact of conviction" and, thus, we conclude the November 6, 2013 entry is final and we proceed to review the merits of the arguments raised in Appellant's brief.

B.  ANDERS BRIEF

{¶11} Under *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396 (1967), counsel may ask permission to withdraw from a case when counsel has conscientiously examined the record, can discern no meritorious claims

---

[2] The law in *Baker* also requires that the required elements constituting a final appealable order "must occur in a single document." *State v. Smead*, 9th Dist. Summit No. 24903, 2010-Ohio-4462, ¶10, citing *Baker,* at ¶7, 893 N.E.2d 163.

for appeal, and has determined the case to be wholly frivolous. *Id.* at 744; *State v. Adkins,* 4th Dist. No. 03CA27, 2004-Ohio-3627, ¶8. Counsel's request to withdraw must be accompanied with a brief identifying anything in the record that could arguably support the client's appeal. *Anders* at 744; *Adkins* at ¶8. Further, counsel must provide the defendant with a copy of the brief and allow sufficient time for the defendant to raise any other issues, if the defendant chooses to. *Id.*

{¶12} Once counsel has satisfied these requirements, the appellate court must conduct a full examination of the trial court proceedings to determine if meritorious issues exist. If the appellate court determines that the appeal is frivolous, it may grant counsel's request to withdraw and address the merits of the case without affording the appellant the assistance of counsel. *Id.* If, however, the court finds the existence of meritorious issues, it must afford the appellant assistance of counsel before deciding the merits of the case. *Anders* at 744; *State v. Duran,* 4th Dist. No. 06CA2919, 2007-Ohio-2743, ¶7.

{¶13} In the current action, Appellant's counsel advises that the appeal is wholly frivolous and has asked permission to withdraw. Pursuant to *Anders,* counsel has filed a brief raising two potential assignments of error for this Court's review.

## C.  POTENTIAL ASSIGNMENTS OF ERROR

"I.    THE VERDICT WAS AGAINST THE MANIFEST WEIGHT OF
        THE EVIDENCE BECAUSE THE STATE DID NOT PROVE
        BEYOND A REASONABLE DOUBT THE ELEMENT OF
        POSSESSION."

"II.   THE VERDICT WAS AGAINST THE MANIFEST WEIGHT OF
        THE EVIDENCE BECAUSE THE STATE DID NOT PROVE
        BEYOND A REASONABLE DOUBT THE ELEMENT THAT THE
        PILL WAS A CONTROLLED SUBSTANCE."

## 1. STANDARD OF REVIEW

{¶14}  When considering whether a conviction is against the manifest weight of the evidence, our role is to determine whether the evidence produced at trial "attains a high degree of probative force and certainty required of a criminal conviction." *State v. Fry,* 4th Dist. Jackson No. 03CA26, 2004-Ohio-5747, quoting *State v. Getsy,* 84 Ohio St.3d 180, 193, 702 N.E.2d 866 (1998). The reviewing court sits, essentially, as a " 'thirteenth juror' and [may]disagree []with the fact finder's resolution of the conflicting testimony." *Fry, supra,* quoting *State v. Thompkins,* 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), quoting *Tibbs v. Florida,* 457 U.S. 31, 42, 102 S.Ct. 2211 (1982).  The reviewing court must dutifully examine the entire record, weighing the evidence and considering the credibility of witnesses, but keeping in mind that credibility generally is an issue for the trier of fact to resolve.  *Fry, supra,* citing *State v. Thomas,* 70 Ohio St.2d 79,

80, 434 N.E.2d 1356 (1982); *State v. De Hass,* 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus.  The reviewing court may reverse the conviction if it appears that the factfinder, in resolving evidentiary conflicts, " 'clearly lost its way and created such a  manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. ' " *Thompkins,* 78 Ohio St.3d at 387, 678 N.E.2d 541, quoting *State v. Martin,* 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (Ist. Dist. 1983).  On the other hand, we will not reverse a conviction if the state presented substantial evidence upon which the trier of fact could reasonably conclude that all essential elements of the offense had been established beyond a reasonable doubt.  *Fry, supra,*citing *State v. Eley,* 56 Ohio St.2d 169, 383 N.E.2d 132 (1978), syllabus.

## 2. LEGAL ANALYSIS

{¶15}  Because Appellant's assignments of error are interrelated and necessitate review under the "manifest weight of the evidence" standard, we consider them jointly.  Under Appellant's first assignment of error, she argues constructive possession was not proven by the state.  At trial, Appellant testified she had recently changed purses and was using her daughter's purse.  Appellant denied knowing the one-half Hydrocodone tablet was in the purse.

**{¶16}**  Possession of a controlled substance may be actual or constructive. *State v. Williams,* 4th Dist. Ross No. 03CA2736, 2004-Ohio-1130, ¶23.  See *State v. Wolery,* 46 Ohio St.2d 316, 329, 348 N.E.2d 351 (1976) (Internal citations omitted.).  A person has "actual possession" of an item if the item is within his immediate physical possession.  *Williams, supra,* citing *State v.Fugate,* 4th Dist. Washington No. 97CA2546, 1998 WL 729221, *7. "Constructive possession" exists when an individual is able to exercise dominion and control over an item, even if the individual does not have immediate physical possession of it.  *Williams, supra,* citing *State v. Hankerson,* 70 Ohio St.2d 87, 434 N.E.2d 1362 (1982), syllabus.  A defendant's mere presence in an area where drugs are located does not conclusively establish constructive possession.  *Williams, supra,* at ¶25; *State v. Cola,* 77 Ohio App.3d 448, 450, 602 N.E.2d 730 (11th Dist. 1991); *Cincinnati v. McCartney,* 30 Ohio App.2d 45, 48, 281 N.E.2d 855 (1st. Dist. 1971).  However, a defendant's proximity to drugs may constitute some evidence of constructive possession. *Williams, supra,* at 25.  Mere presence in the vicinity of drugs, coupled with another factor probative of dominion or control over the contraband, may establish constructive possession. *Fugate,* at *8.

{¶17} At trial, Trooper Wilson identified Appellant and described the facts surrounding his encounter with her on the roadside as set forth above. Specifically, Trooper Wilson testified another officer, Trooper Hurd, retrieved the purse from the driver's side of the vehicle after Appellant told him where to find it. Trooper Wilson further testified Appellant advised the purse belonged to her, and he found a prescription bottle inside, with multiple pills and one Hydrocodone. He described the Hydrocodone pill as white, one-half tablet, oval-shaped. Trooper Wilson asked Appellant if it was her pill bottle and her pills, and she advised it was. She also identified the pill as Hydrocodone. Trooper Wilson testified at no time, did he see anybody at the scene, other than the defendant, with that particular purse.

{¶18} On cross-examination, Trooper Wilson identified Defendant's Exhibit 1 as the pill bottle in question. He admitted the prescription on the bottle was made out to Angela Massey.

{¶19} Appellant testified she was in the process of moving on the date of her arrest. Her daughter, Angela Massey, was helping her. However, her car broke down on the road. Appellant also identified Defendant's Exhibit 1, the pill bottle. Appellant testified as follows:

Q.     And whose pill bottle is that

A.     Um, Angela Massey's.

Q.     And was, was it located in your purse at a period, for a period of time?

A.     Yes.

Q.     Okay.  And how did it get there?

A.     Uh, it was her purse and she had threw my stuff in there to change purses because we had a funeral to go to.  That's why we were down here, to get my stuff and to go to the funeral.

Q.     So when you're talking about your purse and that you identified, or that they're identifying as your purse was that actually your purse?

A.     Yes.

Q.     Okay.  Now, because this is a little confusing.  How was it that the pills ended up in that purse?

A.     Because I, she had my purse.  She had a box, she had some of my stuff.  So she got the purse out and I said I need to change pocketbooks, mine's too small, so she took the stuff out and just threw it in the purse that was in the box that was at her house.  So she had evidently used my purse.

Q.     Okay.  So she had used this purse was…

A.     Yes.

Q.     …this was found in?

A.     Yes.

Q.     And how recently before this happened had she used your purse?

A.     Uh, probably while I was in Georgia.  Because my stuff…

Q.     Okay.  Can you give me, was that week, two weeks, a month?

A.    Uh, three months.

Q.    Okay.  And had you used that purse since that time?

A.    No.

Q.    Okay.  So when was the first time you had used your purse after she had used it?

A.    Uh, probably just a few, a couple of days before uh, I had loaded up my stuff in the car.

Q.    Okay.  Now tell me basically uh, how the officer came to get the purse?

A.    Um, it was in the car, I was in the patrol car, someone, one of the officers went to the car and got my purse out of the car.

Q.    Okay.  Did you tell them that you wanted your purse?

A.    Yes.

Q.    And then they got it for you?

A.    Yes.

Q.    Now did they ask you anything about the contents of that purse?

A.    If the contents were mine.

Q.    And what was your response?

A.    Yes.

Q.    Okay. Did you realize at the time that that pill bottle was in there?

Q.    Is that pill bottle yours?

A.    No.

{¶20}  On cross-examination, Appellant testified she had been using the purse but had not been inside it for a couple of days. She admitted her wallet was in the purse and she had put it there.  She testified her daughter put everything that was in the other purse in the one she used.  Appellant testified they had changed purses but she had not been in her purse, or even carrying it around.  She denied knowing there was a bottle of pills and she denied hearing the pills rattle inside.

{¶21}  A purse is something so closely identified with a person that if it is with her, or in close proximity at the time the officer stops her, then it is in her possession. *State v. Straight,* 9th Dist. Summit No. 12541, 1986 WL 10257, *2.  In *State v. Ritchie,* 1st Dist. Hamilton No. C-810658, 1982 WL 8680, the appellate court stated "[W]e believe a woman's purse in her possession [under the circumstances revealed by the record] is within the area under her immediate control.  Her purse is equivalent to men's pockets, not to luggage separated from her immediate control."  Various courts have analyzed Appellants' arguments denying "possession" and "knowledge" of contraband found in purses.

{¶22}  In *State v. Montgomery*, 10th Dist. Franklin No. 89AP-1355, Montgomery was found guilty of two counts of possession of a controlled

substance in violation of R.C. 2925.11. A search of the residence where Montgomery was located revealed, among other items, a purse containing a Tylenol bottle which contained Schedule II controlled substances. Montgomery argued on appeal her conviction by jury trial was against the manifest weight of the evidence, and contended that while the purse was hers, that fact did not prove she knowingly possessed the drugs contained in the Tylenol bottle. Montgomery contended someone else could have placed those in her purse without her knowledge. While acknowledging the evidence against Montgomery was primarily circumstantial and the scenario of how the drugs came in to her possession was possible, it did not present a reasonable scenario. Montgomery's conviction was affirmed.

{¶23} In *State v. Jackson*, 11th Dist. Ashtabula No. 2002-A-0027, Jackson also argued her conviction by a jury of possession of crack cocaine was against the manifest weight of the evidence. She argued during the search of her person, there was a sufficient amount of time for someone to have planted the crack cocaine in her purse. The appellate court noted while Jackson's assertion was true, the state had presented evidence to establish the purse belonged to Jackson; no one planted crack cocaine in the purse; and that the crack cocaine fell from Jackson's purse when she emptied its contents as instructed by an officer. Thus, viewed in the light most

favorable to the prosecution, there was sufficient evidence to establish Jackson possessed the crack cocaine. The appellate court also held after a thorough review of the record, it could not say the jury's verdict was against the manifest weight of the evidence.

{¶24} In *State v. Scott,* 3rd Dist. Seneca No. 13-04-05, 13-04-36, 2005-Ohio-549, Scott was convicted of possession of drug paraphernalia and possession of marijuana. Her convictions were despite the fact Scott's purse was out of her actual possession for two hours after it was reported stolen. The appellate court found sufficient evidence to prove Scott possessed the items because Scott identified and laid claim to the purse and its contents, and because she admitted she used the drugs for medical reasons.

{¶25} In *State v. Harvath,* 5th Dist. Stark No. 2005CA00330, 2006-Ohio-5549, Harvath was convicted by a jury of illegal assembly or possession of chemicals for the manufacture of drugs, carrying concealed weapons, and aggravated possession of drugs. Harvath had been the driver of a suspicious vehicle which made a questionable turn, and was stopped by a Masillon police officer. Harvath drove the vehicle with a male passenger up front and one female passenger in the back. A brown leather purse (containing an Ohio I.D. card, a loaded handgun, a vial of suspected methamphetamine, a coffee filter, a white powder substance suspected to be

methamphetamine, an electronic scale, one gold earring, pseudoephedrine tablets, and money) was found in the front seat. Harvath gave her name to the arresting officer as "Christine Heppe. "

{¶26} At trial Harvath denied the purse found in her friend's car was hers and testified she did not even see the purse inside the vehicle. She also denied knowledge of the gun and drugs found inside her purse. She also testified that a gold earring inventoried at the jail was not hers and was placed in her inventory by mistake. Harvath argued her convictions were against the sufficiency and the manifest weight of the evidence.

{¶27} On appeal, Harvath pointed out: (1) another woman was in the car at the time the purse was found; (2) a cell phone contained in the purse was stipulated at trial to belong to someone else; and (3) the gold earring was not hers. However, the state produced evidence at trial that the purse and the contraband belonged to Harvath. The arresting officer testified Harvath identified herself as "Christine Heppe." An Ohio ID card containing the name "Christine Heppe" was found in the purse, which was located in the front of the car, next to the driver's seat, of the car which Harvath drove. No other females were seated in the front seat of the car. The gold earring inventoried from Harvath's possessions matched an earring found in the purse. In addition, when another officer walked into the jail and

asked for "Christine," Harvath came forward. At trial and on appeal, Harvath maintained that officer was lying. However, the appellate court noted the jury, as trier of fact, was in the best position to assess credibility. Appellant's convictions were affirmed.

{¶28} In the case *sub judice,* we note on redirect, Appellant testified the purse was "pretty big" and full, made out of plastic and canvas. She testified there were things at the bottom of the purse that even had she opened it, she would not have seen. Because the purse was partially cloth, she would not have heard any pills rattling. Appellant denied cutting the pill in half.

{¶29} The State of Ohio then recalled Trooper Wilson in rebuttal, who testified Appellant's purse was small and black. He examined it by placing it on the hood of a vehicle. The top of the purse folded open and the pill bottle was visible from the top. He further testified Appellant's small wallet with her I.D. was in the purse. On cross-examination, Trooper Wilson testified he did not have a picture of the purse. He admitted since the time of Appellant's traffic stop, he had had possibly 200 other stops.

{¶30} Having reviewed the entire record, weighed the evidence, and considered the credibility of the witnesses, we find the State of Ohio presented substantial evidence upon which the trier of fact could reasonably

conclude that all essential elements of the offense of possession of drugs had been established beyond a reasonable doubt. In doing so, we are mindful that the credibility of the witnesses was an issue for the trial court to resolve.

{¶31} Here, the State of Ohio presented evidence of actual and constructive possession. Trooper Wilson testified there were no other females at the scene, only two males assisting Appellant with her car trouble. The purse was retrieved from the driver's side of the vehicle, where Appellant told him it would be. Therefore, the purse was in her immediate physical possession. This evidence also demonstrates Appellant had dominion and control over the purse, even though she did not have immediate physical possession at the time she was being questioned by Trooper Wilson on the roadside.

{¶32} Appellant's testimony was confusing in that, at the scene, she initially indicated the purse belonged to her. Then she testified the purse belonged to her daughter, Angela Massey, who had thrown Appellant's "stuff" in it, "to change purses because we had a funeral to go to." Appellant further testified she had used the purse but had not been inside it for a couple of days, although she admitted her wallet was in the purse. Trooper Wilson testified Appellant's I.D. was in the wallet. When he opened the purse to examine it, the pill bottle was visible from the top.

Interestingly, at trial, Angela Massey never presented to testify as to the "purse switch" or as to the ownership of the pill bottle and Hydrocodone that was purportedly hers.[3] Furthermore, Appellant was in the process of moving from the Gallia County area to Urbana, Ohio. Given the travel and the circumstances also surrounding a move, it is not reasonable to think that Appellant had not had occasion to remove her wallet for a couple of days.

{¶33} Finally, Appellant described the purse as big and full, made out of cloth. For that reason, she did not hear a pill bottle rattling. By contrast, Trooper Wilson testified the purse was small and black and, as noted above, the pill bottle was easily seen from the top. The trier of fact was in the best position to resolve any credibility issues. This court tends to agree with the trial court's general assessment that "people don't put things in [a] purse that [gets carried around ] for a couple of days and [I] don't know what's in it." For the above reasons, we do not find the trier of fact clearly lost its way and created a manifest miscarriage of justice requiring reversal of Appellant's conviction.

{¶34} In her second assignment of error, Appellant contends the State did not present evidence of a scientific analysis or testimony of an expert witness for the identification of the substance. The admission or exclusion

---

[3] Admittedly, the evidence does not show us if Angela Massey's prescription was valid on the date of Appellant's arrest.

of evidence is within the sound discretion of the trial court, and the trial court's decision to admit or exclude such evidence cannot be reversed absent an abuse of discretion. *State v. Craft,* 4th Dist. Athens NO. 97CA53, 1998 WL 255442, *7 (Internal citations omitted.). The term "abuse of discretion" connotes more than an error of judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. *Craft, supra*, citing *State v. Xie,* 62 Ohio St.3d 521, 583 N.E.2d 715 (1992); *State v. Montgomery,* 61 Ohio St.3d 410, 575 N.E.2d 167 (1991). When applying the abuse of discretion standard of review, we are not free to merely substitute our judgment for that of the trial court. *Craft, supra,* citing *In re Jane Doe 1,* 57 Ohio St.3d 135, 137-138, 566 N.E. 2d 1181 (1991), citing *Berk v. Matthews,* 53 Ohio St.3d 161, 169, 559 N.E.2d 1301 (1990).

**{¶35}** Appellant specifically argues the State relied upon the testimony of Trooper Wilson that Appellant identified the tablet as Hydrocodone.[4] On cross-examination, Trooper Wilson admitted he could not identify the pill and it was sent off to a laboratory. He also admitted he did not have any laboratory testing results with him that day. We note, Appellant did not object or raise this issue in the trial court proceedings. As

---

[4] At the outset, the parties stipulated to Trooper Wilson's qualifications as a "duly qualified and acting peace officer in the State… of Ohio at all times relevant to the case."

such, we will review Appellant's argument under a "plain error" standard of review.

{¶36}  Pursuant to Crim. R. 52(B), we may notice plain errors or defects affecting substantial rights. *State v. Smith,* 4th Dist. Highland No. 09CA29, 2010-Ohio-4507, ¶67.  We will notice plain error "only to prevent a manifest miscarriage of justice. " *Id.,* quoting *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), at paragraph three of the syllabus.  And "reversal is warranted only if the outcome of the trial clearly would have been different absent the error."  *Id.,* quoting *State v. Hill,* 92 Ohio St.3d 191, 203, 2001-Ohio-41,749 N.E.2d 274, citing *Long* at paragraph two of the syllabus.

{¶37}  Trooper Wilson did not testify as an expert witness.  He testified on redirect, he could not identify the pill and that is why he asked Appellant to identify it.  He relied on her identification.  He further testified: "[T]he Trooper and I looked it up in the uh, pill bible book…through his phone."  He testified the description in the reference guide matched the physical description and the pill he had for Hydrocodone, Schedule III. Trooper Wilson reiterated that information matched what Appellant had told him.

{¶38} Since the adoption of the Rules of Evidence, both on the state and federal levels, many courts have used an Evid.R. 701 analysis and have allowed lay witnesses to testify about the identity of a drug. *State v. McKee,* 91 Ohio St.3d 292, 2001-Ohio-41, 744 N.E.2d 737. Evid. R. 701 provides:

> "If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of his testimony or the determination of a fact in issue."

> "[C]ourts have permitted lay witnesses to express their opinions in areas in which it would ordinarily be expected that an expert must be qualified under Evid.R. 702[5]….Although these cases are of a technical nature in that they allow lay opinion testimony on a subject outside the realm of common knowledge, they will fall within the ambit of the rules requirement that a lay witness's opinion be rationally based on firsthand observations and helpful in determining a fact in issue. These cases are not based on specialized knowledge within the scope of Evid. R. 702, but rather are based upon a layperson's personal knowledge and experience."

{¶39} The *McKee* court held that the "experience and knowledge of a drug user lay witness can establish his or her competence to express an

---

[5] Evid.R. 702 governs the admissibility of expert testimony. The rule states:

"A witness may testify as an expert if all of the following apply:

(A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception among lay persons;

(B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;

(C) The witness' testimony is based on reliable, scientific, technical, or other specialized information….."

opinion on the identity of a controlled substance if a foundation for this testimony is first established."

**{¶40}** In applying this case law to the facts at hand, we note Trooper Wilson's testimony pits his credibility against Appellant's. He testified Appellant told him the pill was Hydrocodone. By contrast, Appellant testified when asked about the type of pill, she told the trooper she "didn't know." Again, in resolving conflicts in the testimony, the trier of fact is in the best position to observe the witnesses' demeanor and weigh credibility.

**{¶41}** Furthermore, in accordance with the law in *McKee,* although Trooper Wilson may have not known it at the time of the stop, the evidence demonstrates it was reasonable to rely on Appellant's identification of the drug. The evidence at trial established a foundation for Appellant's opinion. At trial, Appellant identified Defendant's Exhibit 2, a pill bottle with prescription in 2010 made out to her for Hydrocodone. Appellant testified she would have recognized Hydrocodone because of her previous prescription.

**{¶42}** In this case, Trooper Wilson relied on Appellant's identification. He subsequently matched the pill she identified as Hydrocodone with the description of Hydrocodone in a reference guide. The evidence at trial established a foundation for Appellant's knowledge and

showed, albeit after the fact, the trooper's reliance on her identification was reasonable. Based on these facts, we find no plain error occurred. We therefore overrule Appellant's second assignment of error and affirm the judgment of the trial court.

### D. CONCLUSION

{¶43} In our view, the trial court's findings are supported by the record. As such, we also conclude that the potential assignments of error advanced by appellate counsel are wholly without merit. The motion of counsel for Appellant requesting to withdraw as counsel is granted. This appeal is hereby dismissed.

**APPEAL DISMISSED.**

# **JUDGMENT ENTRY**

It is ordered that the APPEAL BE DISMISSED.  Costs are assessed to Appellant.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Gallipolis Municipal Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Harsha, J. & Hoover, J.:  Concur in Judgment Only.

For the Court,


BY:  _____
Matthew W. McFarland, Judge

## **NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**